FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 12, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MID-CENTURY INSURANCE COMPANY, a California corporation doing business in Washington,<br><br>    Plaintiff/Intervenor Defendant,<br><br>and<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY and LIBERTY INSURANCE COMPANY,<br><br>    Intervenor Plaintiffs,<br><br>    v.<br><br>ACI NORTHWEST, INC., an Idaho corporation,<br><br>    Defendant. | NO: 2:20-CV-406-RMP<br><br>ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is a Motion for Summary Judgment by Intervenor Plaintiffs Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation (collectively, "Liberty Mutual"), ECF No. 24. The Court has reviewed

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 1

1  Liberty Mutual's Motion, ECF No. 24, Statement of Undisputed Material Facts,

2  ECF No. 24-2, and supporting declarations and exhibits, ECF Nos. 24-3 through 24-

3  5; Defendant ACI Northwest, Inc.'s Joinder with Liberty Mutual, ECF No. 26;

4  Plaintiff and Defendant-in-Intervention Mid-Century Insurance Company's ("Mid-

5  Century's") Opposition, ECF No. 27, Statement of Disputed Material Facts, ECF

6  No. 28, and supporting declaration and exhibits, ECF No. 29; and Liberty Mutual's

7  Reply, ECF No. 31, and Statement of Material Facts Not in Dispute, ECF No. 31-1;

8  heard oral argument; reviewed the remaining record and the relevant law, and is

9  fully informed.

## BACKGROUND

The following facts are undisputed unless otherwise noted.

***Underlying Litigation***

This case arises out of an underlying case, separately before this Court, *Jeanette Hotes-Aprato, Personal Representative of Estate of Robert J. Aprato, Jr. v. ACI, Northwest, Inc.*, No. 2:19-cv-200-RMP (E.D. Wash.). The underlying case was precipitated by Robert Aprato's death following an accident at work on December 21, 2016. The complaint filed by Mr. Aprato's Estate alleges that Mr. Aprato was driving a dump truck hauling ore from the Buckhorn Mine in Okanagan County, Washington, when the truck's brakes failed, and the truck careened over an embankment and fell twenty feet to the roadway below. Giddings Excavation, LLC ("Giddings") owned the dump truck and employed Mr. Aprato. ACI had

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 2

subcontracted with Giddings to provide a truck and a driver to assist in hauling ore. Mr. Aprato's Estate filed a wrongful death action against ACI, alleging negligence based on a failure to maintain a safe work environment, including sufficiently inspecting and maintaining the truck that Mr. Aprato was driving.

The complaint in the underlying case further alleges that the United States Department of Labor's Mine Safety and Health Administration ("MSHA") investigated Mr. Aprato's fatal accident and "determined that the braking systems on the truck and trailer that Robert Aprato had been driving had not been maintained in a functional condition" and that the "brake defects had existed over an extended period of time and there were no indications or records that maintenance or repairs had been conducted for the braking system, or records showing that [ACI] had been ensuring that such maintenance was occurring." ECF No. 1-2 at 3 in Case No. 2:19-cv-200-RMP. The complaint in the underlying case alleges negligent inspection and maintenance of the brakes on the truck and trailer driven by Mr. Aprato and does not allege a breach of duty with respect to any incident other than the truck accident. *See id.* at 3–4.

In August 2020, the Court granted in part a partial summary judgment motion brought by Mr. Aprato's Estate and ruled that "Defendant ACI shall be liable for non-party Giddings' negligence, if proven to a factfinder, as a matter of law based on a common law theory of direct liability and a control theory of vicarious liability." ECF No. 57 in Case No. 2:19-cv-200-RMP.

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 3

### *ACI and Giddings' Subcontract*

Approximately two months before Mr. Aprato's accident, ACI and Giddings entered into a subcontract providing for Giddings, as subcontractor, to haul ore from the Buckhorn Mine (the "Subcontract"). With respect to indemnification, the Subcontract provides:

> **Article 7.** INDEMNIFICATION: To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Owner, Architect, Architect's consultants and Contractor from all damages, losses, or expenses, including attorney's fees, from any claims or damages for bodily injury, sickness, disease, or death, or from claims for damage to tangible property, other than the work itself. This indemnification shall extend to claims resulting from performance of this Subcontract and shall apply only to the extent that the claim or loss is caused in some part by a party to be indemnified. The obligation of Subcontractor under this Article shall not extend to claims or losses that are primarily caused by the Architect, or Architect's consultant's performance or failure to perform professional responsibilities.

ECF No. 24-3 at 5.

The Subcontract also contains a "Subcontract Schedule of Values," which provides: "Subcontractor's driver shall perform daily truck inspections" and that "[a]ll supplies, parts and repairs [are] the responsibility of Subcontractor." ECF No. 24-3 at 8.

### *Mid-Century Policy*

Mid-Century issued a Business Automobile Policy to Giddings (the "Mid-Century Policy"), which covers "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' . . . caused by an 'accident' and

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 4

resulting from the ownership, maintenance or use of a covered 'auto.'" ECF No. 24-4 at 31. The Mid-Century Policy defines "insureds," in relevant part as:

> a. You for any covered "auto".
> . . .
> c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

ECF No. 24-4 at 31–32.

The dump truck that Mr. Aprato was driving in his fatal accident was owned by Giddings and was a "covered 'auto'" under the Mid-Century Policy. *See* ECF Nos. 27 at 3; 28 at 1–4.

The Mid-Century Policy also imposes a "duty to defend any 'insured' against a 'suit' asking for" damages because of bodily injury caused by an accident and resulting from the ownership, maintenance, or use of a covered auto. ECF No. 24-4 at 31. The duty to defend does not extend to any "'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply." *Id.*

The Mid-Century Policy provides that liability coverage for an "insured" is subject to the following policy exclusion:

> B.   Exclusions
>      This insurance does not apply to any of the following:
>      . . .
>      2.   Contractual
>           Liability assumed under any contract or agreement.
>
>           But this exclusion does not apply to liability for damages:

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 5

        a.    Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

        b.    That the "insured" would have in the absence of the contract or agreement.

. . .

ECF No. 24-4 at 32.

The Mid-Century Policy defines "insured contract" to mean, in relevant part: "That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another to pay for 'bodily injury' or 'property damage' to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." ECF No. 24-4 at 40.

With respect to other applicable insurance, the Mid-Century Policy provides:

        a.    For any covered "auto" you own, this coverage form provides primary insurance.
        . . .
        c.    Regardless of the provisions of Paragraph a. above, this coverage form's Liability Coverage is primary for any liability assumed under an "insured contract".

ECF No. 24-4 at 38.

/ / /

/ / /

/ / /

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 6

*Liberty Mutual Policies*

Liberty Mutual Fire Insurance Company issued a Commercial General Liability ("CGL") policy and Liberty Insurance Corporation issued an Umbrella Excess Policy (collectively, "Liberty Mutual Policies") to ACI.

With respect to "Other Insurance," the Liberty CGL policy provides:

> a. This insurance is primary except when Paragraph b. below applies. If this insurance is primary, [Liberty Mutual's] obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

ECF No. 24-5 at 27. Under "Paragraph b," the Liberty CGL insurance is "excess," not primary, when, among other circumstances, "the loss arises out of the maintenance or use of . . . 'autos'." *Id*. (Section 4(b)(1)(iv)).

The "Excess Insurance" provision further states:

> (2) When this insurance is excess, we will have no duty under Coverages A or B to defend the Insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
>
> (3) When this insurance is excess over other Insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
> > (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
> > (b) The total of all deductible and self-insured amounts under all that other insurance.
>
> (4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not

> bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

ECF No. 24-5 at 27.

In "Paragraph c" of the "Other Insurance" section, the Liberty GCL policy provides a "Method of Sharing":

> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
>
> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

ECF No. 24-5 at 27.

The Liberty Umbrella Excess Policy provides that it is "excess over, and will not share or contribute, with any 'other insurance,' whether primary, excess, contingent or on any other basis."  ECF No. 24-5 at 149.

ACI tendered the defense of the underlying litigation to Mid-Century, and Mid-Century initially denied both defense and indemnity coverage on the assertion that ACI is not an insured based upon the allegations in the complaint in the underlying litigation.  ECF No. 1 at 5.

On approximately August 26, 2020, Mid-Century and Liberty Mutual agreed to contribute equally to ACI's defense in the underlying litigation, subject to a reservation of rights.  ECF Nos 1 at 5; 16 at 5.  Upon agreeing to

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 8

1    equally share the cost of defending ACI in the underlying litigation, Mid-
2    Century also agreed to reimburse Liberty Mutual for fifty percent of past
3    defense costs.  *See* ECF Nos. 1 at 5; 24-2 at 5; 28 at 1–4.

4    ***Procedural History***

5    Mid-Century filed a Complaint in the above-captioned case on October
6    30, 2020, raising a single claim for a declaratory judgment "declaring all of
7    the relative rights and responsibilities of the parties under the contracts of
8    insurance at issue herein" and declaring "whether [Mid-Century] has a duty
9    to provide coverage to ACI and is entitled to reimbursement of defense costs
10   paid for ACI's defense."  ECF No. 1 at 8.

11   On January 25, 2021, Liberty Mutual filed a Complaint-in-Intervention
12   seeking declaratory relief finding that: (1)  Mid-Century has an obligation to
13   defend ACI in the underlying litigation as an "additional insured" under the
14   Mid-Century Policy issued to Giddings; (2) the terms of the Mid-Century
15   Policy and the acts alleged in the underlying litigation give rise to an
16   obligation to indemnify ACI, in the underlying litigation, as an "additional
17   insured" under the Mid-Century Policy issued to Giddings; and (3) the terms
18   of the Mid-Century Policy and the acts alleged in the underlying litigation
19   give rise to "an immediate, primary obligation to defend and indemnify" ACI
20   by Mid-Century in the underlying litigation as an "additional insured" under
21   the Mid-Century Policy issued to Giddings.  ECF No. 16 at 6–10.  Liberty

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT ~ 9

Mutual also raises a fourth claim seeking equitable indemnity and contribution. *See id.* at 10.

Liberty Mutual moves for summary judgment on its first cause of action (duty to defend) and third cause of action (priority of coverage). ECF No. 24-1 at 3. However, Liberty Mutual does not seek summary judgment on its second cause of action (duty to indemnify) or fourth cause of action (equitable indemnity and contribution). *See id.*

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court views the evidence "in the light most favorable to the nonmoving party . . . and draw[s] all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). The moving party bears the burden of showing the absence of a genuine issue of material fact, or in the alternative, the moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's prima facie case. *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *See id.* at 324. The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3 (internal quotations omitted).

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 10

Summary judgment should be granted where the nonmoving party does not come forth with evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

## DISCUSSION

Liberty Mutual seeks summary judgment on their first cause of action, alleging that Mid-Century owes a duty to defend ACI, and on their third cause of action, alleging that any obligations by Mid-Century are primary to any obligations owed by Liberty Mutual. ECF No. 24-1 at 2–3. ACI adds that if Liberty Mutual's Motion for Summary Judgment is granted, then the Court also should dismiss with prejudice all claims by Mid-Century in its Complaint against ACI and award "all costs allowed by law to ACI and against, and to be paid by, Mid-Century." ECF No. 26 at 2.

Mid-Century maintains that it opposes summary judgment only in part, as it agrees "that its duty to defend [ACI] was triggered and that it has a duty to defend ***at this time***." ECF No. 27 at 2 (emphasis in original). However, Mid-Century opposes summary judgment with respect to the priority of coverage by arguing that Liberty Mutual has not established that ACI is an "insured" under the Mid-Century policy because ACI has not yet been held liable for the negligence of Giddings. *See* ECF No. 27 at 18–19. Mid-Century also argues that ACI cannot be an insured under the Mid-Century policy, and Liberty Mutual's policies are primary, for purposes of ACI's own acts of negligence, the liability for which remains at issue in the

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 11

1   underlying litigation. *See id.* at 2–3. Mid-Century maintains that Liberty Mutual

2   and Mid-Century both have a duty to defend ACI for their respective insured's

3   conduct. Therefore, Mid-Century argues, summary judgment is premature until a

4   factfinder in the underlying litigation determines whether ACI is liable for its own

5   negligence or for the conduct of non-party Giddings. *See* ECF No. 27 at 2–3.

6       Liberty Mutual counters that if Mid-Century has a duty to defend, it is

7   primary, according to the language of the insurance contracts at issue. Therefore,

8   Liberty Mutual argues that there is no genuine issue of material fact that persists due

9   to any unresolved question in the underlying litigation.

10      This matter is before the Court on diversity jurisdiction. *See* ECF No. 1 at 2;

11  28 U.S.C. § 1332. Therefore, the Court applies Washington state substantive law.

12  *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1934). The interpretation of an insurance

13  contract is a question of law. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52

14  (Wash. 2007). Washington courts "interpret insurance contracts as an average

15  person would and in a manner that gives effect to each provision of the policy."

16  *N.H. Indem. Co. v. Budget Rent-A-Car Sys.*, 148 Wn.2d 929, 933 (Wash. 2003).

17      The Washington Supreme Court has recognized that "[t]he rule regarding the

18  duty to defend is well settled in Washington and is broader than the duty to

19  indemnify." *Woo*, 161Wn.2d at 52. The duty to defend arises at the time an action

20  is filed, "and is based on the potential for liability." *Truck Ins. Exch. v. VanPort*

21  *Homes, Inc.*, 147 Wn.2d 751, 760 (Wash. 2002). If a complaint is ambiguous as to

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 12

whether it triggers the duty to defend, Washington courts liberally construe the complaint in favor of finding a duty to defend. *Id.* "In contrast, the duty to indemnify 'hinges on the insured's *actual liability* to the claimant and *actual coverage* under the policy." *Woo*, 161 Wn.2d at 53 (quoting *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64 (Wash. 2000) (emphasis added in *Woo*)).

It is undisputed that Giddings agreed in its subcontract with ACI to indemnify ACI for Giddings' negligence. *See* ECF No. 27 at 4. Mid-Century acknowledges that the subcontract between Giddings and ACI qualifies as an "insured contract" for purposes of the Mid-Century Policy, "but only to the extent of Giddings' liability." *Id.* at 11 (emphasis in original removed). Mid-Century continues that Giddings did not indemnify ACI for ACI's own negligence, and Mid-Century asserts that, therefore, there is a material question of fact as to whether ACI will be held liable for its own negligence in the underlying litigation. *See id.* at 4.

The Mid-Century Policy defines an "insured" as the policy holder, Giddings, "for any covered 'auto.'" ECF No. 24-4 at 31–32. An "insured" is also "anyone liable for the conduct of [Giddings] but only to the extent of that liability." *Id*. The Court already found in the underlying litigation that ACI "shall be liable for non-party Giddings' negligence, if proven to a factfinder." ECF No. 57 in Case No. 2:19-cv-200-RMP. A duty to defend arises in Washington law when an action is initiated, "and is based on the potential for liability." *Truck Ins.*, 147 Wn.2d at

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 13

760. Therefore, ACI is an "insured" under the Mid-Century Policy for purposes of a duty to defend ACI in the underlying litigation.

Indeed, Mid-Century agrees that it has a duty to defend, but disputes only whether its duty can be determined to be primary before it is known whether ACI will be found liable for its own negligence. Mid-Century does not cite to a contractual provision in any of the insurance policies at issue to support this assertion; nor does Washington caselaw support such an outcome.

Rather, the Mid-Century Policy states that its coverage "provides primary insurance" for any "covered 'auto'" and "for any liability assumed under an 'insured contract.'" ECF No. 24-4 at 38. Under the Mid-Century Policy, an "insured," in this case Giddings, is entitled to primary insurance for liability when an accident arising out of the "ownership, maintenance or use" of a "covered 'auto'" causes bodily injury or damages. ECF No. 24-4 at 31–32, 38. There is no dispute that the Giddings-owned truck was a covered auto or that Giddings is an "insured." ECF Nos. 24-2 at 2, 5; 28.

In addition, applying the Mid-Century Policy's provision concerning primary insurance for an "insured contract," there is no dispute that the subcontract between Giddings and ACI is an "insured contract," as it indemnifies ACI from a claim for bodily injury or death resulting from any negligent act or omission by Giddings in the underlying litigation. *See* ECF No. 24-3 at 5. Furthermore, the Mid-Century Policy exclusions do not apply to any liability for damages that is

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 14

assumed through an insured contract or that the insured would have in the absence of the contract or agreement. ECF No. 24-4 at 32. Despite exclusions set forth in the Mid-Century Policy, the Mid-Century Policy covers liability for damages that is assumed through an insured contract or that the insured would have in the absence of the contract or agreement. *See* ECF No. 24-4 at 32; *see also Campbell v. Ticor Title Ins. Co.*, 166 Wn.2d 466, 472 (2009) (Washington courts "strictly and narrowly" construe exceptions when interpreting an insurance policy).

Moreover, the duty to defend in the Mid-Century Policy covers any "'insured' against a 'suit' asking for" damages because of bodily injury caused by an accident and resulting from the ownership, maintenance, or use of a covered auto. ECF No. 24-4 at 31. The Mid-Century Policy does not qualify this duty to defend as limited to situations when only the insured's, in this case Giddings', liability is at issue. The exception to Mid-Century's duty to defend Giddings applies only where a suit seeks "damages for 'bodily injury' to which this insurance does not apply." ECF No. 24-4 at 31. As this Court has determined in the underlying litigation, ACI shall be liable for non-party Giddings' negligence, and the complaint in the underlying litigation alleges that Mr. Aprato was fatally injured when ACI failed to maintain a safe work environment, and that Giddings and ACI failed to sufficiently inspect and maintain the truck that Mr. Aprato was driving. ECF Nos. 1-2 at 3; 57 in Case No. 2:19-cv-200-RMP. Therefore, by the

1  plain terms of the Mid-Century Policy, Mid-Century has a duty to defend in the
2  underlying litigation.

3  Looking to the Liberty Mutual Policies, the Liberty GCL policy explicitly
4  provides that its insurance is "excess" when "the loss arises out of the maintenance
5  or use of 'autos.'" ECF No. 24-5 at 27. Again, the complaint in the underlying
6  litigation alleges bodily injury and damages from the use or maintenance of the
7  covered Giddings-owned truck. *See* ECF No. 1-2 at 3 in Case No. 2:19-cv-200-
8  RMP.

9  Furthermore, none of the insurance contracts at issue, neither the Mid-
10  Century Policy nor the Liberty Mutual Policies, provides for the fifty/fifty split of
11  defense costs that Mid-Century seeks to retain as the abiding arrangement until a
12  final liability determination is made in the underlying litigation. Rather, giving
13  effect to each pertinent provision of the policies, the Mid-Century Policy is
14  primary for purposes of a duty to defend, and the Liberty Mutual Policies are
15  excess, in light of the relationship between ACI and Giddings and the alleged
16  conduct and harm in the underlying litigation. *See N.H. Indem. Co.*, 148 Wn.2d at
17  933. For purposes of the duty to defend, Washington law looks at the relationship
18  of the parties at the outset of an action, and Mid-Century is liable for the conduct
19  of Giddings in the underlying litigation, to the extent that Giddings is determined
20  liable. *See Truck Ins.*, 147 Wn.2d at 760.

21

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 16

Therefore, viewing the undisputed facts in the light most favorable to Mid-Century, the Court finds that, under the Mid-Century Policy, Mid-Century owes a duty to defend ACI in the underlying litigation that is primary to any obligation by Liberty Mutual. However, the Court does not find that dismissal with prejudice of Mid-Century's Complaint in its entirety, as ACI requests in its Joinder, is appropriate because Liberty Mutual's Motion for Summary Judgment on their first and third prayers for relief in their Complaint-in-Intervention does not resolve Mid-Century's Complaint in its entirety . *See* ECF No. 26 at 2. Liberty Mutual's Motion for Summary Judgment seeks judgment only with respect to Mid-Century's duty to defend and the priority of coverage, which the Court does find is appropriate for summary judgment at this juncture. ECF No. 24-1 at 3. Mid-Century's Complaint seeks a declaration of "all of the relative rights and responsibilities of the parties under the contracts of insurance at issue herein," and Liberty Mutual acknowledges that it is premature to determine whether ACI is entitled to indemnification from Mid-Century under the Mid-Century Policy. ECF No. 1 at 8.

Accordingly, **IT IS HEREBY ORDERED**:

1. Intervenor Plaintiffs Liberty Mutual's Motion for Summary Judgment, **ECF No. 24**, is **GRANTED**.

2. Defendant ACI's request for dismissal with prejudice of Plaintiff Mid-Century's Complaint in full is denied. *See* ECF No. 26 at 2

ORDER GRANTING INTERVENOR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 17

3.  The District Court Clerk shall enter Judgment for Intervenor Plaintiffs Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation (collectively, "Liberty Mutual") on their First and Third Causes of Action declaring that:

   a. Mid-Century Insurance Company ("Mid-Century") has an obligation to defend ACI Northwest, Inc. ("ACI") in the underlying litigation, *Jeanette Hotes-Aprato, Personal Representative of Estate of Robert J. Aprato, Jr. v. ACI, Northwest, Inc.*, No. 2:19-cv-200-RMP (E.D. Wash.), under the Mid-Century Policy issued to Giddings; and

   b. The terms of the Mid-Century Policy and the acts alleged in the underlying litigation give rise to a primary obligation to defend ACI by Mid-Century in the underlying litigation under the Mid-Century Policy issued to Giddings.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, provide copies to counsel, and enter judgment as directed.

**DATED** November 12, 2021.

                    *s/ Rosanna Malouf Peterson*
                    ROSANNA MALOUF PETERSON
                      United States District Judge